IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| CHRISTINA D., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 20-1918 |
| v. | * | |
| | * | |
| | * | |
| KILOLO KIJAKAZI, | * | |
| Acting Commissioner of Social Security, | * | |
| | * | |
| Defendant.[1] | * | |

***********

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

Plaintiff Christina D. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Acting Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 21).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.

I

**Background**

Plaintiff filed a complaint in this Court seeking review of the Commissioner's final decision denying her applications for DIB and SSI filed on April 18, 2014 (R. at 773-81). *Christina D. v. Comm'r of Soc. Sec.*, No. 8:18-cv-00932-SAG (D. Md. filed Apr. 2, 2018). Following the Court's remand on the parties' consent (R. at 782-84), Administrative Law Judge ("ALJ") Richard Furcolo held a supplemental hearing on April 4, 2019, in Washington, D.C., where Plaintiff appeared and a vocational expert ("VE") testified (R. at 582-601). The ALJ thereafter found on June 10, 2019, that Plaintiff was not disabled from her alleged onset date of disability of July 6, 2011, through the date of the ALJ's decision. R. at 559-81. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since July 6, 2011, and that she had severe impairments. R. at 565. She did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 566.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could occasionally climb stairs and ladders, balance, stoop, kneel, crouch, and crawl." R. at 566.[3] In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

2

relevant work as a retail store manager, front-desk clerk, and management trainee. R. at 573-74. The ALJ thus found that Plaintiff was not disabled from July 6, 2011, through June 10, 2019. R. at 574.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on June 25, 2020, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made,

the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not

5

disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

IV

## Discussion

Plaintiff contends that the ALJ erred by failing to evaluate properly the opinions of Sylvester Okonkwo, M.D., her treating physician (R. at 477-80, 1082-87).  Pl.'s Mem. Supp. Mot. Summ. J. 4-16, ECF No. 14-2.  Plaintiff also maintains that the ALJ erroneously evaluated her subjective complaints.  *Id.* at 16-19.  She finally argues that the ALJ erred by finding that her mental impairments were not severe and by failing to include mental limitations in the RFC assessment.  *Id.* at 19-25.  For the reasons discussed below, the Court remands this case for further proceedings.

Plaintiff first asserts that the ALJ erred in not giving the greatest weight assigned to treating source opinions such as Dr. Okonkwo's.  *Id.* at 13-16.  Dr. Okonkwo opined in January 2017 that Plaintiff was likely to be off task more than 25% of a typical workday and was likely to be absent from work more than four days per month.  R. at 477.  He opined that, among other things, the Plaintiff (1) could occasionally lift and carry less than ten pounds; (2) could sit, stand, and walk for two hours each in an eight-hour workday; and (3) required the option to sit/stand at will.  R. at 478.  The ALJ gave "no weight" to Dr. Okonkwo's opinion.  R. at 571.  "Although Dr. Okonkwo has a longtime treating relationship with [Plaintiff] and examines her frequently, his physical examination findings are inconsistent with his opinion."  R. at 571-72.  The ALJ also found that Dr. Okonkwo's opinion was inconsistent with the opinion of Plaintiff's treating psychiatrist and that his treatment notes did not document a psychiatric examination.  R. at 572.  The ALJ further found that the doctor's physical examination findings did not support the degree of limitation that he assessed.  R. at 572.  The AJ finally found that Dr. Okonkwo had identified no medical or clinical findings that supported his assessment.  R. at 572.

In March 2019 Dr. Okonkwo completed a second treatment source statement, again opining that Plaintiff was likely to be off task more than 25% of a typical workday and was likely to be absent from work more than four days per month. R. at 1082. The doctor also opined that, among other things, Plaintiff was able to maintain attention and concentration for less than fifteen minutes before requiring a break. R. at 1082. The ALJ gave "some/little weight to Dr. Okonkwo's March 2019 opinion" for most of the same reasons that the ALJ gave no weight to the doctor's January 2017 opinion, except, "unlike his January 2017 opinion, Dr. Okonkwo did provide some explanation in support of his [March 2019] opinion." R. at 572. According to the ALJ, however, "this explanation is not sufficient to overcome the doctor's actual examination findings, which are not grossly consistent with his opinion." R. at 572.

> For claims—like [Plaintiff's]—filed before March 27, 2017, the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist. The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." Generally, however, more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."

*Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017) (alteration in original) (citations omitted); *see* 20 C.F.R. §§ 404.1527, 416.927.

> Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of

8

examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384-85 (4th Cir. 2021) (alterations in original) (citations omitted); *see* 20 C.F.R. §§ 404.1527(c)(2)(i)-(6), 416.927(c)(2)(i)-(6).  While "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 385.

Here, the ALJ stated that he had considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 (R. at 566), even acknowledging the six factors and stating that he had "considered" them (R. at 572).  Although the ALJ did not give controlling weight to Dr. Okonkwo's opinions, it does not appear, however, that the ALJ meaningfully considered each of the factors under §§ 404.1527(c) and 416.927(c) before deciding how much weight to give the doctor's opinions.  *See Dowling*, 986 F.3d at 385; *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020).  Although the ALJ considered the supportability and consistency of Dr. Okonkwo's opinions with the record as a whole, the length of the doctor's treatment relationship with Plaintiff, and the frequency of the doctor's examination, the ALJ apparently did not meaningfully consider the nature and extent of the treatment relationship, the doctor's specialization, and other factors under 20 C.F.R. §§ 404.1527(c)(6) and 416.927(c)(6), such as the doctor's understanding of disability programs and their evidentiary requirements and the extent of his familiarity with the other information in

Plaintiff's case record.  Remand is thus warranted under *Dowling*.  *See Dowling*, 986 F.3d at 386.

Plaintiff then argues that the ALJ failed to acknowledge or discuss her testimony and other allegations at the second step of 20 C.F.R. §§ 404.1529 and 416.929.  Pl.'s Mem. Supp. Mot. Summ. J. 18, ECF No. 14-2.  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  R. at 567.  The ALJ "carefully considered [Plaintiff's] subjective complaints, including those in her disability and function reports.  However, these complaints are outweighed by the objective medical evidence."  R. at 568-69.  "The objective evidence fails to establish that [Plaintiff] has any significant restrictions that would prevent her from performing work consistent with the above [RFC], despite her subjective complaints."  R. at 573.  "In so finding, the undersigned has considered all [her] complaints and has thus limited her to light work and to occasional performance of posturals."  R. at 573.

The Fourth Circuit recently reiterated the standard used by ALJs to evaluate a claimant's symptoms:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and [Social Security Ruling ("SSR")] 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled.  At this step, objective evidence is *not* required to find the claimant disabled.  SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively

>through clinical or laboratory diagnostic techniques." Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them.

*Arakas*, 983 F.3d at 95 (alteration in original) (citations omitted).[5]

Thus, ALJs who require a claimant's subjective descriptions of her symptoms to be supported by objective medical evidence improperly increase the claimant's burden of proof. *Id.* at 96. Plaintiff was, therefore, entitled to rely exclusively on subjective evidence to prove that her symptoms were so continuous or severe that they prevented her from working a full eight-hour day. *See id.*; *see also id.* at 97 ("And we have previously held that ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record.").

Plaintiff also contends that the ALJ did not "indicate what activities, if any, show that [she] is capable of sustaining activities consistent with the RFC." Pl.'s Mem. Supp. Mot. Summ. J. 18, ECF No. 14-2. "A claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities." *Arakas*, 983 F.3d at 101. Thus, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Plaintiff testified at her previous administrative hearing in January 2017 that, among other things, she had to sit down after cooking for five minutes. R. at 42. She washed dishes incrementally. R. at 42. Without a cane, she could stand for only five to ten minutes. R.

---

[5] SSRs are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

at 42-43. She could sit for only half an hour and would need breaks to dress herself. R. at 43, 44. She also testified that in a week she had four or five bad days when she would be in pain all day. R. at 44. She also reported on a function report that with help she washed laundry every two weeks and ironed clothes twice a week. R. at 234. She did not shop because she could not stand for very long without pain. R. at 235. She could only lift about two pounds and walk for only five to ten minutes before stopping to rest. R. at 237. The ALJ here did not "explain how those activities showed that [Plaintiff] could sustain a full-time job" and could actually perform the tasks required by light work. *Brown*, 873 F.3d at 269; *see Arakas*, 983 F.3d at 100. The Court remands this case to afford the ALJ the opportunity to do so.

Plaintiff finally argues that the ALJ erred by findings that her mental impairments were not severe and by failing to include mental limitations in the RFC. Pl.'s Mem. Supp. Mot. Summ. J. 19-25, ECF No. 14-2. Because the Court remands this case on other grounds, the Court need not address Plaintiff's remaining argument. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an administrative law judge upon a court remand, and that the ALJ must consider de novo all pertinent issues."). The Court notes, in any event, that the ALJ is not required to address specifically a claimant's non-severe impairments in the RFC analysis. *Britt v. Saul*, __ F. App'x __, No. 19-2177, 2021 WL 2181704, at *5 (4th Cir. May 28, 2021). Rather, the ALJ "is only required to *consider* these non-severe impairments." *Id.*

In sum, the ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (alteration in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). An ALJ's

failure to do so constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court remands this case for further proceedings. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods*, 888 F.3d at 694).

## V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: August 16, 2021

/s/
Thomas M. DiGirolamo
United States Magistrate Judge